NUMBER 13-99-506-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


____________________________________________________________________


MARY D. SIEGERT, ET. AL. Appellants,


v.



SENECA RESOURCES CORPORATION 

AND DANIEL C. HERNDON, ET AL., Appellees.

____________________________________________________________________


On appeal from the 335th District Court


of Burleson County, Texas.


____________________________________________________________________


O P I N I O N



Before Justices Hinojosa, Chavez and Rodriguez



Opinion by Justice Chavez





 This is an appeal of a summary judgment. We affirm. Appellants
Mary D. Siegert, James O. Siegert, Linda Siegert Warren, and William
P. Siegert brought suit against Seneca Resources Corporation to recover
damages for fraud regarding the execution of an oil and gas lease. 
Appellants allege that Seneca Resources Corporation had agreed as a
condition of an oil and gas lease that appellants were the owners of all
minerals in approximately eighty-one acres of land in Burleson County,
Texas. Appellants further allege that the eighty-one acres of land were
created by accretion to a 100 acre parcel of land. Appellees are twenty-five individuals who claim a three-fourths mineral interest in the entire
tract of land. Seneca Resources Corporation interpled and brought
appellees into this case because of a three-fourths reserved mineral
interests reserved for appellees by deeds in 1932 and 1953. The
dispute between appellants and appellees is the ownership of the
suspended royalties attributable to the land to which both appellants
and appellees claim. Appellees raise two cross issues, first claiming
that the trial court erred when it refused to grant them attorney's fees,
and secondly they allege that appellants' appeal is frivolous and
therefore they should be awarded just damages. We reject appellees'
arguments.

 Our inquiry in this summary judgment is whether the summary
judgment proof establishes as a matter of law that there is no genuine
issue of material fact as to the plaintiffs' cause of action. Tex. R. Civ. P.
166a; Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548
(Tex. 1985). The burden of proof is on the movant, and all doubts
regarding material facts are resolved against the movant. Nixon, 690
S.W.2d at 548-49. Grounds supporting or opposing a summary
judgment must be raised in the motion or written response to the
motion before the trial court renders judgment. City of San Antonio v.
Schautteet, 706 S.W.2d 103, 104 (Tex. 1986); City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 679 (Tex. 1979). 

 The land in dispute was located in Brazos County until 1913,
when the Brazos River changed course and the land shifted to the other
side of the river in Burleson County. Since this time, the water that
runs along the property has been relatively stable, and the land has
remained in Burleson County. The ownership rights of the minerals
beneath the land depend upon how the deeds which have transferred
the land since 1913 are construed under Texas law. 

 Appellants argue that the deed under which appellees claim their
reservation of mineral interest fails for lack of a valid description. This
reservation was made in a 1932 transfer of the land. If the 1932 deed
were to fail for lack of a valid description, appellees would have no right
to any of the land. In its pertinent part the deed reads:

Also 100 acres of land, now situated in Burleson County,
Texas, and was formerly part of the Walter Sutherland
League, and is lying in the bend of the old Brazos River, on
the Burleson County side, as it now runs. This tract of land
was formerly part of the Walter Sutherland League in Brazos
County, Texas. But now since the Brazos River has changed
its course, this land is in Burleson County, Texas, and almost
surrounded by the Fisher League. An actual survey made by
W.B. Francis on the 26th day of May, 1931 shows the land,
contained inside of the banks of the old river to be 98.2 acres
of land. If one half of the old river bed should be included in
the survey, then the acreage would be 130 acres of land.


Appellants claim that no formal field note description of this parcel was
made a part of the instrument, and that the above description would
not facilitate the location of the property with reasonable certainty.

 "The rule by which to test the sufficiency of description is so well
settled . . . as almost to compel repetition by rote: To be sufficient, the
writing must furnish within itself, or by reference to some other writing,
the means and data by which the land to be conveyed may be identified
with reasonable certainty." Morrow v. Shotwell, 477 S.W.2d 538, 539
(Tex. 1972) (citing Norris v. Hunt, 51 Tex. 609 (Tex. 1879); Osborne v.
Moore, 247 S.W.2d 498 (Tex. 1923); Smith v. Sorelle, 87 S.W.2d 703
(Tex. 1935); Wilson v. Fisher, 188 S.W.2d 150 (1945); Pickett v. Bishop,
223 S.W.2d 222 (Tex. 1949); Hoover v. Wukasch, 254 S.W.2d 507
(Tex. 1953); Broaddus v. Grout, 258 S.W.2d 308 (Tex. 1953); Rowson
v. Rowson, 275 S.W.2d 468 (1955)). If a conveyance does not describe
the land to be conveyed sufficiently, it is void under the Statute of
Frauds. Pick v. Bartel, 659 S.W.2d 636, 637 (Tex. 1983); McDaniel v.
Carruth, 637 S.W.2d 498, 505 (Tex. App.--Corpus Christi 1982, no
writ). "If enough appears in the description so that a party familiar with
the locality can identify the premises with reasonable certainty, it will
be sufficient." Gates v. Asher, 280 S.W.2d 247, 248-49 (Tex. 1955). 
This is referred to as the "nucleus of description" theory. Westland Oil
Dev. Corp. v. Gulf Oil Corp., 637 S.W.2d 903, 909 (Tex. 1982). Under
this theory of construction, "[w]ords of description are given a liberal
construction in order that a conveyance may be upheld." Gates, 280
S.W.2d at 248.

 A formal field note description of this parcel could make this
instrument easier to construe. However, under the nucleus of
description theory it is not necessary. Appellants draw our attention to
a line of cases based in the primary sufficiency of description rule(1)
which instructs that when an unidentifiable portion of land contained
in a larger identifiable tract is described in a conveyance, it is held to be
void for lack of certainty as not satisfying the Statute of Frauds. Texas
Builders v. Keller, 928 S.W.2d 479, 482 (Tex. 1996); Greer v. Greer, 191
S.W.2d 848, 850 (Tex. 1946); Smith, 87 S.W.2d at 706. 

 The land described in the deed is not an unidentifiable portion of
a larger tract. Appellants argue that the phrase, "lying in the bend of
the old Brazos River" is uncertain because an infinite number of parcels
of land could be constructed as lying in the bend of the Brazos River. 
Appellants also argue that the description of the land is void for lack of
adequate description because it states only the amount of acres, and
refers to a survey and asserts the county and state in which the land is
situated; appellants then draw our attention to a case where this kind
of information alone was held to be not an adequate description of the
land in dispute. MacLane v. Smith, 198 S.W.2d 493 (Tex. Civ. App.--Fort Worth 1946, pet. ref'd n.r.e.). However, all of the descriptive
language in a deed must be considered when construing the intent of
the grantor. Randal v. Rutherford, 577 S.W.2d 368, 371 (Tex. Civ.
App.--Fort Worth 1979, pet. ref'd n.r.e.). Both the phrase "lying in the
bend of the old Brazos River," and the acreage, together with the
statements in the deed that the land "was formerly part of the Walter
Sutherland League in Brazos County" and that the land is "almost
surrounded by the Fisher League" are enough detail by which the land
may be identified with reasonable certainty.

 Appellants further draw our attention to the affidavit of a licensed
surveyor admitted into evidence in which the surveyor states that he
would be unable to locate the property as described in the 1932 deed. 
However, the surveyor testified that in 1932, the information provided
would have been sufficient to locate the property. The land has been
resurveyed twice since this deed was written, and better descriptions
of the land appear in later deeds that transfer title of the land. The total
area of the tract of land was established in a 1955 survey as 181.74
acres and is described in a metes and bounds description of the land in
a 1955 deed. 

 Appellants argue that there was no error in measuring or
recording the acreage in the 1932 deed. Instead, they assert that the
additional land measured in the 1955 survey was added to the tract
through accretion. Under the doctrine of accretion, an owner of riparian
land gains title to increases to their property by natural forces. Coastal
Indust. Water Auth. v. York, 532 S.W.2d 949, 952 (Tex. 1976); Manry
v. Robinson 56 S.W.2d 438, 444 (Tex. 1932). 

 Appellants assert that the mineral rights are not included in the
lands that accrete onto riparian property, and that if we determine that
the 1932 deed is valid, the deed only reserves mineral rights to the 100
acres recorded in the 1932 deed. Appellants further argue that
appellees must follow the Texas Supreme Court's standard for
measuring accretion along rivers to designate 100 acres to which they
hold the mineral rights, and eight-one acres accreted onto the land by
measuring the accretion along their property. See Sharp v. Womack, 93
S.W.2d 712, 716 (Tex. 1936) (provides method for measuring accretion
on Texas riverbanks). 

 Appellees do not make the argument that they adversely
possessed the eighty-one acres appellants claim. They instead explain
that no one can know whether or not there was any accretion of the
land between 1932 and 1955. The appellants recognize that there were
major changes to the land, but these changes occurred back in 1913,
well before the era between the 1932 and 1955 deeds. In 1993, when
this litigation began, there was another survey of the same tract of land
which measured the area as 182.08 acres. Appellees argue that during
the thirty-eight years between the 1955 and 1993 surveys, the area of
the land changed from 181.74 acres in 1955, to 182.08 acres in 1993,
for a difference of 0.34 acres, and therefore it is highly improbable that
during the prior twenty-three years from 1932 to 1955 the land
accreted by over eighty-one acres. We recognize the logic and high
probability of validity of this explanation, but base our opinion on
separate legal grounds.

 "The call for acreage in a deed is the least reliable of all calls in a
deed. . . . The mention of the quantity of land may aid in defining the
premises, but it cannot control the rest of the description unless there
is an express covenant in the deed that the acreage mentioned is the
only land to be conveyed." Texas Pacific Coal and Oil Co. v. Masterson,
334 S.W.2d 436, 439 (Tex. 1960). See Foster v. Bullard, 496 S.W.2d
724, 733 (Tex. Civ. App.--Austin, 1973 writ. ref'd. n.r.e.). There is not
an express call in the deed that restricts the mineral rights to 100 acres
of the land. 

 The Third Court of Appeals has decided that accretion applies to
mineral estates as well as to surface estates, and that a severed riparian
mineral interest is subject to accretion, just as a surface estate is
subject to accretion. Ely v. Briley, 959 S.W.2d 723, 726 (Tex. App.--Austin 1998, no pet.). Two other jurisdictions have ruled on this
particular issue, and both have come to the same conclusion. See
Jackson v. Burlington Northern, 667 P.2d 406, 408-09 (Mont. 1983);
see also, Nilsen v. Tennaco Oil Co., 614 P.2d 36, 40-43 (Okla. 1980); Cf.
Eliason v. Registrar, et. al. (1980) D.L.R. (3d) 360, 1980 Alta. D. LEXIS
1271 (Court determined that accreted land takes on the characteristics
of the land to which it is accreted, and awarded surface estate owner
full rights to minerals under a dried lake which accreted to his adjacent
formerly-riparian land).

 We agree with the rationales the Third Court of Appeals provides
in its holding. First, "because a constructively severed mineral estate
is a property interest of equal dignity as a surface estate, it logically
should be subject to accretion." Ely, 959 S.W.2d at 726. Second, the
location of a mineral estate boundary as it existed can only be
determined at a river's shore. Id. Otherwise we would effectively
create claims to slivers or strips of small mineral interests along river
edges that would not appear in title searches, and would be virtually
impossible to administer or to litigate. Finally, in equity, there should
be no difference between the mineral rights in unsevered riparian
mineral interests and severed riparian mineral interests. Id. Otherwise
surface estates could be lost or gained through accretion, but mineral
estates could only be lost through accretion. We overrule appellants'
arguments.

 We now address the cross points appellees raise on appeal. We
will first address appellees' claim for damages from a frivolous appeal. 
When faced with the issue of the alleged accretion of eighty-one acres
onto the land between 1932 and 1955, the trial judge invited this
appeal when he commented, "And probably I'm going to let the court
of appeals rule on that portion." At a post-trial hearing the trial judge
stated, "[I]n my opinion this is a new area of the law that we've got
developed here and I think both litigants in this case have been acting
in good faith to try to find out what the law is." Also, appellants'
arguments regarding the construction of the 1932 deed questioned the
trial judge's determination of the reasonable certainty of the detail used
to identify the land in the deed. In light of these facts, we determine
that this appeal was not frivolous.

 Finally, we address appellees' argument that the trial court erred
when it refused to grant them attorney's fees. Appellees assert that the
law in Texas is that the burden of payment of all attorney's fees for an
interpleader should fall on the unsuccessful party whose claim rendered
the interpleader necessary. We reject this assertion. Appellees'
statement of the law is true only to the extent that the unsuccessful
party whose claim rendered the interpleader necessary must pay
attorney's fees for the disinterested stakeholder who must draw a third
party into the suit. United States v. Ray Thomas Gravel Co., 380
S.W.2d 576, 581 (Tex. 1964); see also Tex. Civ. Prac. & Rem. Code Ann
§ 37.009 (Vernon 1997). In appellants' suit, this is Seneca Resources
Corporation, not appellees. It should make no difference whether or not
appellees were brought into the suit by someone other than the
appellants, for if appellants were to sue appellees directly and lose they
would not have to pay appellees' attorneys fees. 

 When there has been a declaratory judgment, the court's refusal
to grant attorney's fees is reviewed by an abuse of discretion standard. 
Commissioners Court of Titus County v. Agan, 940 S.W.2d 77, 81 (Tex.
1997). The record reflects careful consideration of this matter by the
trial court. The trial judge listened to each side discuss the time and
effort put into this case, the procedural history of the case, the
experience of the attorneys working on the case, the unusual issues
involved in the case, and the actions taken by a visiting judge regarding
the awarding of attorneys' fees before this case went on appeal for a
first time in 1995. We see no abuse of discretion.

 We AFFIRM the judgment of the trial court.

 MELCHOR CHAVEZ

 Justice


Publish.

Tex. R. App. P. 47.3.


Opinion delivered and filed this

the 17th day of August, 2000.

1. Morrow, 477 S.W.2d at 539.