Affirmed and Memorandum Opinion filed August 25, 2009








Affirmed and Memorandum Opinion filed August 25, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-01081-CV

_______________

 

GARY HAMMER, D/B/A HAMMER REMODELING, Appellant

 

V.

 

RAYMOND HAROLD WOOD AND STEPHANIE ANN WOOD D/B/A
FLOORING WORLD, Appellees

                                                                                                                                                

On Appeal from the County Civil Court
at Law No. 3

Harris County, Texas

Trial Court Cause No. 860410

                                                                                                                                               


 

M E M O R A N D U M  O P I N I O N








Appellant,
Gary Hammer, d/b/a Hammer Remodeling (AHammer@), appeals a take-nothing judgment
following a bench trial in his suit against appellees, Raymond Harold Wood and
Stephanie Ann Wood d/b/a Flooring World (collectively Athe Woods@), for breach of implied warranty.[1] 
In a single issue, Hammer contends the trial court erred by concluding that
Texas law does not recognize a common-law cause of action for breach of implied
warranty for repairs to existing tangible property.  We conclude that, even if
the trial court=s conclusion was incorrect, it properly entered a
take-nothing judgment because Hammer presented no evidence of damages.  
Accordingly, because all dispositive issues are settled in law, we issue this
memorandum opinion and affirm.  See Tex. R. App. P. 47.4.

I.  Background

Hammer
was the general contractor for a remodeling project on a residence.  Hammer
subcontracted with the Woods= company, Flooring World, to provide wood flooring material
and installation services.  After installation, Hammer paid the Woods the full
agreed price. Hammer was also paid in full by the homeowners.  Subsequently,
the homeowners complained about buckling of the floor.  Hammer and his expert
attributed the buckling to defective workmanship whereas the Woods and their
expert opined the problems resulted from excessive moisture content in the
home.   The homeowners eventually replaced the floor at their own cost, using a
different contractor.








Hammer
sued the Woods for common-law breach of implied warranty.  The court conducted
a bench trial.  After Hammer rested, the Woods orally moved for a directed
verdict on four grounds: (1) Hammer was not entitled to recover attorney=s fees; (2) he presented no evidence
of damages; (3) he sued the wrong parties; and (4) a breach of implied warranty
for repairs to existing property is actionable only under the Texas Deceptive
Trade Practices Act (ADTPA@), which claim Hammer did not plead.[2] 
The trial court orally announced it denied the motion but also stated it would Ahold out on the DTPA issue@ and AI=m going to grant you a verdict as a
matter of law on that, but not at this time.@

After
the Woods presented evidence, they re-urged their motion for directed verdict
on all four grounds previously stated.  The trial court orally announced it
denied the motion and would allow closing argument instead.  During the Woods= closing argument, they once again
urged the trial court to reconsider the motion for directed verdict on the
various grounds.  After both parties presented closing argument, the trial
court expressed doubt Hammer had presented any evidence of damages and invited
him to submit legal authority on that issue.  Our appellate record does not
contain any brief or other document filed with the trial court regarding that
issue before it rendered judgment.  The Woods did file a trial brief to support
several of their arguments.

On
November 2, 2007, the trial court signed a final judgment ordering that Hammer
take nothing and pay all court costs incurred by the Woods.  The trial court
subsequently signed a document entitled AFINDINGS OF FACT AND CONCLUSIONS OF
LAW@ but it contained no findings of fact
and two conclusions of law:

1.         Plaintiff
sued the correct parties.[3]

2.         Plaintiff=s pleading fail [sic] to state a
viable cause of action regarding breach of implied warranty.  Such a claim may
only be made under the Texas Deceptive Trade Practices Act.

Therefore,
although the trial court previously announced that it denied the Woods= motion for directed verdict on the
ground Hammer had no viable common-law cause of action for breach of implied
warranty as a matter of law, the pertinent conclusion of law demonstrates the
trial court rendered a take-nothing judgment on this ground.  Hammer filed a
motion for new trial and supporting brief, but the trial court denied the
motion.








II.  Analysis

Hammer
presents a single issue for our review, contending the trial court incorrectly
concluded that a claim for breach of implied warranty for repairs to existing
tangible property may only be brought under the DTPA and not under common law. 
The Woods respond that the trial court=s conclusion was correct, but
alternatively, we may uphold the judgment because Hammer failed to present any
evidence of damages.  We agree with the Woods= alternative contention.

If we
determine a conclusion of law is erroneous, but the trial court rendered the
proper judgment, the erroneous conclusion of law does not require reversal.  BMC
Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002); Perna
v. Hogan, 162 S.W.3d 648, 656 (Tex. App.CHouston [14th Dist.] 2005, no pet.); Goebel
v. Brandley, 76 S.W.3d 652, 657 (Tex. App.CHouston [14th Dist.] 2002, no pet.), disapproved
on other grounds by Martin v. Amerman, 133 S.W.3d 262 (Tex. 2004).  Even if
Hammer could assert a common-law cause of action for breach of implied
warranty, he did not present evidence of damages resulting from any breach.  See 
Hyundai Motor Co. v. Rodriguez, 995 S.W.2d 661, 668 (Tex. 1999)
(generally stating plaintiff may recover actual damages for breach of implied
warranty); Paragon Gen. Contractors, Inc. v. Larco Constr., Inc., 227
S.W.3d 876, 886 (Tex. App.CDallas 2007, no pet.) (recognizing that proving  plaintiff
suffered an injury is element of claim for breach of express warranty for
services).[4]








Hammer
testified he was paid in full by the homeowners for installation of the floor
at issue.  Further, Hammer admitted, and the homeowners confirmed, that theyCnot HammerCpaid to have the floor replaced. 
According to Hammer=s testimony, the only costs he incurred because of the
problems with the floor were fees to an expert witness for his inspection and
appearance at trial.  Hammer did not argue at trial or on appeal that these
fees were  recoverable as damages.  See AVCO Corp. v. Interstate
Southwest, Ltd., 251 S.W.3d 632, 662 (Tex. App.CHouston [14th Dist.] 2007, pet.
denied) (holding party could not recover expert witness fees which were
litigation expenses as opposed to actual damages caused by other party=s fraudulent conduct).

Hammer
did present a letter from the homeowners demanding that he reimburse their
replacement costs of $9,141.18.  At trial and on appeal, Hammer primarily
relied on this demand letter as evidence of his damages.  However, Hammer did
not present any testimony that he intended to pay all or part of this amount. 
Without any indication Hammer intended to meet the homeowners= demand, a finding he might pay this
amount in the future would have been based on pure speculation.  See id.
at 656 (stating damages cannot be based on mere speculation and
hypothesis).  For instance, the trial court could not have foreclosed the
possibility Hammer might challenge the homeowners= demand in whole or in part.  In
fact, there was no evidence Hammer had yet paid the homeowners any expenses
resulting from the inadequate floor during the approximately two-year period
between discovery of the problems and trial.[5] 
In short, allowing Hammer to recover $9,141.18 from the Woods in this suit
could potentially compensate him for damages he might not ever incur. 
Therefore, this mere demand letter was not evidence of any damages sustained by
Hammer.  

Hammer
also states on appeal, and suggested to the trial court, that his business
reputation has been damaged due to unsatisfied customers.  However, he cites,
and presented at trial, no evidence to support this contention.








Additionally,
in a brief supporting his motion for new trial, Hammer noted that, since trial,
he had paid the Smiths demand of $9,141.18.  On appeal, he suggests he would
prove these Aadditional facts@ if the case were remanded.  However, Hammer attached no
affidavit or other evidence to the motion for new trial or supporting brief
demonstrating he had paid the homeowners= demand.  Nevertheless, even if he
had attached such evidence to his motion or supporting brief, he did not
present the evidence before judgment was rendered.  Moreover, he did not
request the trial court to reopen the evidence, or grant a new trial based on
newly discovered evidence, if it determined he could assert a cause of action
for breach of implied warranty.  See Tex. R. Civ. P. 270 (providing, in
pertinent part, AWhen it clearly appears to be necessary to the due
administration of justice, the court may permit additional evidence to be
offered at any time . . . @); Chapman v. Abbot, 251 S.W.3d 612, 620 (Tex. App.CHouston [1st Dist.] 2007, no pet.)
(setting forth requirements for obtaining new trial based on newly discovered
evidence). 

Finally,
on appeal, Hammer cites authority to support a contention that his suit was
ripe because the demand letter indicated economic damages were imminent.  See
Patterson v. Planned Parenthood of Houston and Southeast Tex., Inc., 971
S.W.2d 439, 442 (Tex. 1998) (stating ripeness concerns whether, at the time
lawsuit is filed, facts have developed sufficiently so that injury has occurred
or is likely to occur, rather than being contingent or remote).  However, we
are not addressing whether the suit was ripe when filed but whether Hammer
presented evidence of damages once he proceeded to trial.

In sum,
at the time of trial, the homeowners had incurred damages because of the
inadequate floor, but they were not parties to this suit.  Hammer had been
fully paid by the homeowners, had not paid any costs to replace the floor, and
did not prove he would pay such costs in the future.  Therefore, even if the
trial court incorrectly determined that Hammer could not assert his
breach-of-implied-warranty cause of action, the court correctly rendered a
take-nothing judgment in favor of the Woods.  

 

 








Accordingly,
we affirm the trial court=s judgment.

 

 

/s/        Charles
W. Seymore

Justice

 

Panel consists of Chief Justice Hedges and Justices
Anderson and Seymore.

 

 

 

 









[1] The parties disputed at trial whether the Woods were
doing business as AFlooring World@ or
whether Flooring World was incorporated. The Woods claimed Hammer sued the
wrong party by naming them individually because Flooring World was
incorporated.  Because resolution of this issue is not material to our
disposition, we refer to the company as AFlooring
World.@





[2]  Rather than a motion for directed verdict, the
proper motion for a defendant to make after the plaintiff has rested in a bench
trial is a motion for judgment.  Joplin v. Borusheski, 244 S.W.3d 607,
610 (Tex. App.CDallas 2008, no pet.).  Nevertheless, we construe the
Woods= request as a motion for judgment because they clearly
moved for judgment in their favor on several grounds after Hammer rested. 
However, for consistency, we will refer to their request as a motion for Adirected verdict.@  





[3]  On appeal, the Woods do not challenge this
conclusion or argue the judgment should be affirmed because Hammer sued the
wrong parties.   





[4]  We express no opinion on whether Hammer had a
common-law cause of action for breach of implied warranty.  We need not reach
that issue because of our conclusion that Hammer failed to present evidence of
damages.





[5]  The problems were discovered in summer of 2005, and
the Smiths finished replacing the floor at the end of September 2007Cabout two weeks before trial.